## Case No. 6,726.
### In re HOUGHTON.
[See Case No. 6,727.]

## Case No. 6,727.
### In re HOUGHTON.
[4 Law Rep. 482.]

District Court, S. D. New York. Feb., 1842.

BANKRUPTCY—JURAT IN PETITION—FRAUD.

1. In the petition to be declared a bankrupt, the date of the jurat is not essential.

2. A fraudulent transfer by the petitioner will not prevent his being declared a bankrupt.

This was the case of a petition by Charles P. Houghton, to be declared a bankrupt under the late act of the congress of the United States [5 Stat. 440]. Upon a notice to show cause, several objections were made to the decree, to the effect, that there was no date to the jurat; that the petitioner converted trust funds to his own use in May, 1840; and that, in October, 1839, he fraudulently conveyed property to his father in trust for his wife.

BETTS, District Judge. The petition is dated on the 7th of February, without specifying the particular day, and, it is said, this renders the petition imperfect—that no remedy could be had against the party for false swearing, because there could be no proof as to when such false swearing occurred. The objection is not one of substance. The offense would be false swearing, and it forms no part of the attestation that the date should be affixed. It would be sufficient if the party were indicted for false swearing, to shew that the oath was made. If the party were accused of swearing falsely on the 7th of February, it might be proved that it was any other day.

A more important question in the case is, the interposition of the objection, that the petitioner has been guilty of fraud in contemplation of bankruptcy, and whether it would be a sufficient bar to his decree; because the acts of fraud were committed anterior to the passage of the act. The question is, can the court bar the party from his decree because he committed frauds previous to the enactment or its going into actual force? This is a question of great importance, and must sometime or other be met in the courts, as there is no doubt that creditors will interpose various acts of the debtor on the ground of fraud, such as his giving some of his creditors a pieference, or making an assignment for his own benefit. This and various other such objections will no doubt be offered to his discharge. But it seems to me, that this is not the place to raise such objections. No doubt the parties will be met by all sorts of objections that can be raised against making him a bankrupt. All may be brought up, and if they are established they will overthrow his petition, unless the act indicates some other remedy. On this subject the law pronounces, that giving a preference to creditors shall be deemed a fraud against the act. And if it stopped there, the petitioner in such a case would be prevented from getting a decree. But this section is framed for a different purpose. It does not mean that the party shall be stopped from being a bankrupt, but seems to call for an enforcement of his petition, and that he shall be made a bankrupt, and then it goes on to point out how it shall act for the benefit of his creditors. The act of fraud clothes the general assignee with power to take possession of the property, thus indicating that the assignee in such a case is to have power over the property. But if the petition could be stopped there can be no assignee, and the creditors would be remediless, whereas this act contemplates that the act of fraud shall divest the property from the fraudulent assignor, and give it to the benefit of all the creditors. It says that any transfer of property made in contemplation of bankruptcy, to a person not being a bona fide creditor, shall be void, and a fraud on the act. And it is therefore urged, that the party committing a fraud upon the act shall be excluded from the benefit of the act. If the provisions of the act stopped there, the court would apply them. But the act goes on and says that the general assignee shall be at liberty to claim the property so disposed of, as part of the assets of the bankrupt. Therefore it cannot be a bar to obtaining bankruptcy, but puts the property in subjection to the assignee.

It is further said, that the assignee shall immediately go and recover the property thus fraudulently assigned, notwithstanding this assignment. But it does not say that the party shall be prevented from being a bankrupt, but that he shall be deprived of the benefit of the act. It does not debar him from the proceeding, but rather calls for his being made a bankrupt and places the property under the control of the assignee, and the assignee distributes it to the creditors. This construction of the law renders it unnecessary for the court now to pronounce whether all acts, antecedent and before the passage of the statute, came within its provisions. The question does not now come up, and the court need not say whether the statute is retrospective or applies to acts antecedent to its passage.

The court therefore wishes it to be understood, that, in relation to petitions for discharge, it is not sufficient cause to prevent the bankruptcy, to show before this court that there has been a fraudulent assignment, before the passage of this act, as there are other remedies for such cases. And in this case the objections that the petitioner made a conveyance to his father for the benefit of his wife, and made an assignment for preferred creditors, are included in this decision. The objection that the petitioner, since the passage of the act, used trust funds for his own benefit, is a matter of fact, which must go to the commissioners.

[NOTE. On the coming in of the proofs, the evidence showed that the obligations had been bought with funds of the father, and the court held them good for their full amount in the hands of the father as against the bankrupt. Case No. 6,728.]